UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

CIVIL ACTION NO. 3:08-CV-392-H

LANCER INSURANCE COMPANY                                          PLAINTIFF

V.

LANDERS EXPLOSIVES, INC., CEMEX,                              DEFENDANTS
INC. d/b/a KOSMOS CEMENT COMPANY
and LMS CONTRACTING, INC.

**MEMORANDUM OPINION AND ORDER**

This lawsuit arises from a related action (Civil Action No. 3:06CV-124-H) in which

Cemex, Inc. ("Cemex") and Kosmos Cement Company ('Kosmos") seek recovery from LMS

Contracting, Inc. ("LMS") and  Landers Explosives, Inc. ("Landers") for damages arising from a

construction contract.  Here, Plaintiff, Lancer Insurance Company ("Lancer"), seeks a

declaration that the General Liability Insurance Policy (the "Policy") for Landers does not

provide coverage for claims made in the sister lawsuit.[1]  This Court has previously resolved a

similar question of insurance coverage under a policy which St. Paul Fire & Marine Insurance

Co. ("St. Paul") issued to LMS.

I.

Cemex hired Kosmos to build a slot storage facility and tunnel to process crushed

limestone at its Battletown Quarry.  Kosmos contracted with LMS to perform the blasting and

excavation work (the "Contract").  LMS subcontracted that blasting work to Landers.  Cemex

---

[1] Lancer filed an action in Indiana District Court seeking a declaration that the Landers insurance policy did
not cover the underlying action.  The case was then transferred to this Court.

concluded that Landers's blasting work failed to meet project specifications.  Cemex filed a related lawsuit in this Court against LMS and Landers alleging breach of contract and negligence for failure in performing the work that allegedly resulted in damages and to remove un-detonated explosives.

Lancer issued the Policy to Landers effective from September 2004 until March 2005.  Landers had mailed an insurance application from Indiana to Lancer in Texas.  That application provided Indiana addresses for Landers's physical address and site locations.  Lancer mailed back two quotes.  Landers accepted one of the quotes without negotiation.  The Policy was issued and delivered to Landers in Indiana.  It lists two locations owned, rented, or occupied by Landers, both of which are in Indiana.  The only state specific endorsement included in the Policy referenced Indiana.

The Policy provisions are critical to deciding this case.  The Policy insures against "property damage" that is caused by an "occurrence."  It includes exclusions for contractual liability, pollution, damage to the property on which the insured is working, damage to the insured's product, damage to the insured's work (including tunnel construction), and for property damage resulting from defects in the insured's product or work.

In the related action St. Paul intervened to seek a declaration of rights as to an insurance policy which it issued to LMS.  After determining that Kentucky law governed the St. Paul policy, this Court determined that the "control of property" exclusion barred recovery of expenses incurred to complete the work and resulting from leaving the explosives on the property.  *Cemex, Inc. v. LMS Contracting, Inc.,* October 21, 2008, Mem. Op. 7, 9.  In so finding, this Court explained that the damages resulted from LMS's failure to meet the contract

specifications.  *Id.*  Furthermore, any damage incurred happened on property where LMS had

contracted to work.  *Id.*

II.

Before this Court can determine whether the Policy covers the incident, it must determine

which state law governs.  Such a choice can, and in this case does, have a profound affect on the

outcome of the litigation.  Where a court sits in diversity, it "appl[ies] the choice-of-law rules

and substantive law of the forum state."  *Centra, Inc. v. Estrin*, 538 F.3d 402, 409 (6th Cir. 2008)

(citing *Himmel v. Ford Motor Co.*, 342 F.3d 593, 598 (6th Cir. 2003)).  When, however, the

action is transferred from one district court to another "for the convenience of parties and

witnesses," the choice-of-law rules of the transferor court apply.  *Rosen v. Chrysler Corp.*, 205

F.3d 918, 921 n.2 (6th Cir. 200); *see also Martin v. Stokes*, 623 F.2d 469, 471-72 (6th Cir. 1980);

28 U.S.C. § 1404(a).  This case was originally filed in Indiana.  Thus, Indiana choice-of-law

rules apply.

If the law of both forums produces the same result, this Court need not resolve the

choice-of-law question and can find similarly under either law.  *Ind. Ins. Co. v. Am. Cmty. Servs.*,

768 N.E.2d 929, 939 n.7 (Ind. Ct. App. 2002).  Kentucky and Indiana take different approaches

with regard to the interpretation of the general provisions and several exclusions.  *Cf. Amerisure,

Inc. v. Wurster Constr. Co., Inc.*, 818 N.E.2d 998, 1002 (Ind. Ct. App. 2004) (holding that faulty

workmanship does not support a claim for property damage); *Bituminous Cas. Corp. v. Kenway

Contracting, Inc.*, 240 S.W.3d 633, 639 (Ky. 2007) (stating that intentional conduct by the

assured may qualify as an accident).  Since the outcome of the case could be different between

states for some of the issues, this Court must determine which state's law applies to the Policy in

-3-

whole.

For contract actions in Indiana, the law of the state with the most intimate contacts to the facts governs. *Employers Ins. of Wausau v. Recticel Foam Corp.*, 716 N.E.2d 1015, 1024 (Ind. Ct. App. 1999) (citing *Hartford Acc. & Indem. Co. v. Dana Corp.*, 690 N.E.2d 285, 291 (Ind. Ct. App. 1997)). Intimate contacts are determined using five factors: (1) the place of contracting; (2) the place of contract negotiation; (3) the place of performance; (4) the location of the subject matter of the contract; and (5) the domicile, residence, nationality, place of incorporation, and place of business of the parties. *Id.* (citing *Eby v. York-Division, Borg-Warner*, 455 N.E.2d 623, 626 (Ind. Ct. App. 1983)).

The place of performance is "the location where the insurance funds will be put to use." *Id.* (citing *Travelers Indem. Co. v. Summit Corp. of Am.*, 715 N.E.2d 926, 932-33 (Ind. Ct. App. 1999)). Since the place of performance cannot be determined until all coverage issues have been decided, the place of performance "factor is assigned little weight when [. . .] at the time of contracting the place of performance is uncertain or unknown." *Id.* (citing *Hartford Acc. & Indem. Co.*, 690 N.E.2d at 293). The subject matter of the contract is "the principal location of the insured risk." *Id.* (citing *Hartford Acc. & Indem. Co.*, 690 N.E.2d at 293). That factor is "given greater weight than any other single contact in determining the state of the applicable law when that risk can be located principally in a single state," or "when the other [. . .] factors do not point primarily to one forum." *Id.* at 1024-25 (citing *Hartford Acc. & Indem. Co.*, 690 N.E.2d at 293).

Neither the place of contracting or the place of negotiation is determinative. The contracting occurred by mail with no live communication. Landers managed the process from

Indiana, while Plaintiff managed it from Texas.  Additionally no negotiations occurred beyond the submission of an application and the offer and acceptance of a policy.  Neither state is particularly implicated by this process.  The only place of performance specified in the policy is Indiana.  The policy, however, does not preclude coverage of performance that may occur in another state.  Since the coverage issue could not be decided based on the face of the policy, this factor is given little weight.

Nor does the fifth factor provide much guidance.  Plaintiff is an Illinois corporation with its principal place of business in New York.  Landers is incorporated and has its principal place of business in Indiana.  Cemex is a Louisiana Corporation principally operating in Kentucky. LMS is incorporated and has its principal place of business in Indiana.  Thus Illinois, Indiana, Kentucky, Louisiana, and New York each provide a potential source of governing law.  If anything, this factor would suggest Indiana is the appropriate law since it is the state of both incorporation and principal place of business for two defendants.  Ultimately, it provides little guidance.

Since the other factors fail to point to a single forum, the subject matter of the contract is given the most weight.  The only locations listed on this policy were in Indiana, indicating the parties contemplated this as an Indiana contract.  Based on the prospective contemplation of the policy, the subject matter of the contract lies in Indiana.  Accordingly, this Court will apply Indiana law.

III.

The interpretation of an insurance policy is a question of law determined by this Court. *Smith v. Auto-Owners Ins. Co.*, 877 N.E.2d 1220, 1222 (Ind. Ct. App. 2007) (citing *Progressive*

*Ins. Co. v. Bullock*, 841 N.E.2d 238, 240 (Ind. Ct. App. 2006)).  Absent ambiguity and unclear

contract language, this Court applies its plain and ordinary meaning.  *Id.* (citing *Cincinnati Ins.*

*Co. v. Am. Alternative Ins. Corp.*, 866 N.E.2d 326, 332 (Ind. Ct. App. 2007)).  Ambiguous

statements are construed in favor of the insured.  *Amerisure, Inc. v. Wurster Constr. Co., Inc.*,

818 N.E.2d 998, 1002 (Ind. Ct. App. 2004).

Lancer contends that the Policy does not cover the damages claimed in the underlying

incident.  It asserts that the policy language itself makes clear that this incident does not qualify

for coverage.  Lancer also raises several exclusions it says apply and would preclude coverage.

The Policy provides coverage for "occurrences," meaning an "accident," resulting in "property

damage."  Thus, the relevant issues are (1) whether Cemex's claims arise from "property

damage" caused by an "occurrence" covered by the policies, and (2) whether any exclusions

apply to bar coverage of Cemex's claims.

Under Indiana law, a claim for faulty workmanship cannot be a claim for an accident in

Indiana or "property damage."  *Amerisure, Inc.*, 818 N.E.2d at 1004.  Faulty workmanship

constitutes only a breach of contract.  *R.N. Thompson & Assocs., Inc. v. Monro Guar. Ins. Co.*,

686 N.E.2d 160, 165 (Ind. Ct. App. 1997).  "Natural and ordinary consequences" of the acts or

work down by a party are not "accidents."  *Id.*  Such "natural and ordinary consequences"

include the economic losses suffered as the result of a breach of contract.  *Id.*

This Court has previously made clear that the underlying claims at issue result from a

breach of contract and, thus, are claims for faulty workmanship.[2]  The allegations only include a

_____

[2] Relevant statements include: "By failing to meet the requirements of the contract, one might conclude the
property had been 'damaged.'" (Cemex Mem. Op. 4). "[T]he definition of property damage contains no language
precluding faulty workmanship from qualifying as property damage." *Id.*  This is "a case where the walls that were
to be created did not meet contract specifications." *Id.* at 6.  "[A]ll of Cemex's damages resulted from LMS's faulty

failure to perform the work to the standards expected under the contract.  The damages sought are the economic losses from the breach of contract, namely the cost of the necessary remedial measures.  Such damages do not constitute an "accident" that this Policy might cover under Indiana law.  Rather, the underlying claims are based on faulty workmanship which the Policy does not cover.

Being otherwise sufficiently advised,

IT IS HEREBY ORDERED that Lancer's motion for summary judgment is SUSTAINED and this Court declares that Lancer has no legal obligation to either defend or indemnify Landers as to the current claims against it in the related lawsuit *Cemex, Inc. v. LMS Contracting, Inc.*.

This is a final order.

cc:     Counsel of Record

---

work on property where it had contracted to work."  *Id.* at 7.  "[T]he remedy sought only restores the benefits of the contractual promises."  *Id.*  "[T]he Court holds that the control of property exclusion precludes coverage for faulty workmanship in this case."  *Id.* at 8.